**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

LISA J. L.[1],

   Plaintiff,

     v.

FRANK BISIGNANO, COMMISSIONER
OF SOCIAL SECURITY[2],

   Defendant.

CASE NO. 2:24-CV-429-SJF

**OPINION and ORDER**

Plaintiff Lisa J. L. ("Ms. L") seeks judicial review of the Social Security

Commissioner's decision denying Ms. L's application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act ("Act"). This Court may enter a ruling

based on the parties' consent under 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). [DE

8]. For the reasons discussed below, the Court remands the decision of the

Commissioner of the Social Security Administration ("SSA") for further administrative

proceedings.

**I.  OVERVIEW OF THE CASE**

Ms. L filed an application for DIB on September 14, 2022, alleging disability

beginning August 16, 2022. (Administrative Record[3] 17; hereinafter "AR"). She was

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

[2] Frank Bisignano became the Commissioner of the Social Security Administration on May 6, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.

[3] Administrative Record page numbers are noted in the bottom right corner of the page in the Administrative Record document filed at docket entry 5.

denied initially, on reconsideration, and after a hearing before an administrative law judge ("ALJ"). (*Id.*). The ALJ issued this unfavorable decision on June 17, 2024. (AR 31). Ms. L requested further review of the ALJ's decision, which the Appeals Council denied on October 11, 2024. (AR 1). Thus, the ALJ's decision became the final decision of the Commissioner. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Ms. L filed suit in this Court on December 6, 2024. The Court has jurisdiction under 42 U.S.C. § 405(g). Ms. L filed her opening brief requesting remand for further administrative proceedings on March 21, 2025. The Commissioner filed his response in support of the ALJ's decision on May 20, 2025. Her case became ripe on June 17, 2025, when Ms. L filed her reply in support of remand.

## II.    APPLICABLE STANDARDS

### A.    Disability Standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations of: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3)

whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based on his Residual Functional Capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 404.1520. The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

### B.    Standard of Review

The Court has authority to review a disability decision by the Commissioner under 42 U.S.C. § 405(g). But this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals.

3

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of no disability, however, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)(citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

## III.  DISCUSSION

### A.  Summary of the ALJ's Decision Denying Benefits

Ms. L's online video hearing before the ALJ took place on May 30, 2024. (AR 17). Ms. L appeared along with an attorney. On June 17, 2024, the ALJ issued a written decision denying Ms. L's application for DIB, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520. (AR 18, AR 31).

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. L had not engaged in substantial gainful activity since August 16, 2022, her alleged onset date. (20 C.F.R. § 404.1571 et seq., and § 416.971 et seq.). (AR 19).

At Step Two, an ALJ's inquiry focuses on whether the claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ concluded that Ms. L suffered from the following severe impairments: severe emphysema; history of lung cancer/post upper left lung lobectomy; history of breast cancer; lung nodules with recurring pneumonia; rheumatoid arthritis; degenerative disc disease of the lumbar spine; osteoarthritis of the bilateral hands; COPD; diabetes mellitus—poorly controlled; non-alcoholic fatty liver (NASH); and osteoarthritis of the left knee (mild). (AR 19). The ALJ thus concluded that these medically determinable impairments significantly limit Ms. L's ability to perform basic work activities as required by S.S.R. 85-28.

The ALJ concluded at Step Three that Ms. L does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). In doing so, the ALJ considered Listings 1.15, 1.18, 3.02, 13.10, 13.14, and 14.09. (AR 20). Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. L can perform her past relevant work based on her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ concluded that Ms. L retained the RFC to perform sedentary work with the following limitations:

> Except [Ms. L] has the option to alternate sitting and standing every 30 minutes at one time, for up to 5 minutes at one time, while remaining on task. [Ms. L] can never climb ladders, ropes, or scaffolds, never kneel or crawl, but can occasionally climb ramps, stairs, stoop, crouch, and balance as defined in the SCO [Selected Characteristics of Occupations]. [Ms. L] can frequently handle and finger with the bilateral extremities. She can frequently reach with the right upper extremity. [Ms. L] must avoid concentrated exposure to temperature extremes, humidity, and pulmonary irritants.

(AR 21). Based on this RFC, at Step Four, the ALJ found that Ms. L could perform her past relevant work as a legal secretary, stating that this work would not require the performance of work-related activities precluded by her RFC. (AR 30). During the hearing, the Vocational Expert (VE) also stated that Ms. L has skills that would transfer to other positions like contact clerk, correspondence clerk, and civil service clerk. Thus, the ALJ determined that Ms. L has not been under a disability from August 16, 2022, through the date of the ALJ's decision. (*Id.*).

### B.     Issues for Review

Ms. L raises three overarching issues for the Court's review. First, Ms. L contends that the ALJ violated the requirements of 20 C.F.R. § 404.1520c by failing to adequately explain why the objective findings and explanation provided by Ms. L's treating rheumatologist, Dr. Sarah Everakes, M.D., did not support her medical opinion. [DE 11 at 8-11]. On this issue, Ms. L also maintains that the ALJ failed to acknowledge that the medical opinions from Ms. L's treating providers are all consistent. Next, Ms. L alleges that the ALJ violated the requirements of S.S.R. 96-8p by rejecting all medical opinions in whole or in part, contending that this resulted in RFC limitations unsupported by the evidence. [*Id.* at 11-15]. As to this second argument, Ms. L challenges two RFC findings: that Ms. L could frequently handle and finger, and that Ms. L could stay on task while alternating between sitting and standing. [*Id.* at 14-15]. Finally, Ms. L maintains that the ALJ violated S.S.R. 16-3p when the ALJ relied on irrelevant findings, unsupported conclusions, and her own lay opinions regarding the objective evidence. [*Id.* at 16-18]. In response, the Commissioner contends that the ALJ articulated sound reasons for discounting the medical opinion evidence and for how she evaluated Ms. L's symptoms to determine the RFC. [DE 15 at 1, 6, 11, 12]. The Commissioner thus contends that Ms. L's arguments improperly ask the Court to reweigh the evidence. The Commissioner also directly responds to each of Ms. L's arguments.

For the reasons explained below, the Court finds Ms. L's second argument—as it pertains to the RFC's sit/stand option while remaining on task—to be persuasive. The ALJ failed to build an accurate and logical bridge between the evidence and the RFC

7

limitation that Ms. L "has the option to alternate sitting and standing every 30 minutes at one time, for up to 5 minutes at one time, while remaining on task." (AR 21). With no explanation from the ALJ or medical opinion in the record regarding this limitation, the Court cannot find substantial evidence supports this RFC limitation. Accordingly, remand is appropriate here.

### C.    RFC to Remain on Task While Alternating Positions

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." S.S.R. 96-8p. "A 'regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* The RFC is the ***most*** someone "can do despite their mental and physical limitations." 20 C.F.R. § 404.1545(a)(1) and § 416.945(a)(1); S.S.R. 96-8p(5) (emphasis added). A claimant's RFC must include limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). This "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

As stated, Ms. L has challenged whether substantial evidence supports the RFC limitation that she can sustain work-related activities on a regular and continuing basis when she "has the option to alternate sitting and standing every 30 minutes at one time, for up to 5 minutes at one time, while remaining on task." (AR 21). Ms. L contends that

this limitation lacks evidentiary support because the ALJ found none of the medical opinions in the record to be fully persuasive and because the ALJ failed to identify other evidence that shows Ms. L could remain on tasking when shifting positions. [DE 11 at 14].

Here, the ALJ weighed medical opinions from the following providers: the state agency medical consultants (who reviewed Ms. L's records at the initial and reconsideration levels), an opinion from Dr. Sarah Everakes, M.D. (Ms. L's treating rheumatologist), an opinion from Dr. J. Cantorna, M.D., (a treating physician), and an opinion from Dr. Tapan Desai, M.D. (Ms. L's treating pulmonologist). (AR 28-29). The ALJ found all the opinions to be unpersuasive except for the portion of the state agency medical consultants' opinions regarding environmental limitations (limitations that Ms. L must avoid concentrated exposure to temperature extremes, humidity, and pulmonary irritants). (AR 28).

But, as the Commissioner contends, however, while "an ALJ must consider the entire record [in forming an RFC], the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Gase v. Comm'r of Soc. Sec.*, No. 1:23-CV-00295-SLC, 2024 WL 3565473, at *4 (N.D. Ind. July 25, 2024)(quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)). "Thus, there is not an evidentiary deficit simply because an ALJ rejects the opinions of the agency reviewing and consulting physicians. Rather, the question is whether the rest of the record supports the ALJ's RFC assessment." *Laughton v. O'Malley*, No. 1:23-CV-35-HAB, 2024 WL 748752, at *5 (N.D. Ind. Feb. 22, 2024). Put another way, "the caselaw in this

Circuit supports the assertion that an ALJ rejecting all medical opinions **may,** but does not always, create an evidentiary gap in the record that requires remand." *Michael B. v. Bisignano*, No. 4:24-CV-00043-KMB-TWP, 2025 WL 1770747, at *2 (S.D. Ind. June 26, 2025) (emphasis added). Thus, the Court must consider whether the record and the ALJ's analysis support the RFC determination as to the sit/stand option.

When assessing Ms. L's RFC, the ALJ acknowledged Ms. L's testimony that she experiences "stiffness if she sits for a prolonged period of time" and noted that this was also "documented in [Exhibit] 29F." (AR 26). As the decision states, Ms. L testified about this concern during her online video hearing:

```
    Q  Okay.  Do you have any trouble for sitting for long periods
of time?
    A  Yes.  I can't sit for long periods of time nor can I stand
for long periods of time.  It hurts me in my back and my hips.
```

(AR 56). Though the ALJ makes no specific references within Exhibit 29F regarding Ms. L's stiffness, the Court acknowledges that Ms. L's complaints of stiffness are noted throughout the rheumatology treatment notes contained in this record. For example, one treatment note within Exhibit 29F provides that Ms. L "states she will get stiff throughout her body if she sits for a prolonged period of time and she reports a feeling of restlessness in her legs which pushes her to move." (AR 2766; *see also* AR 2966, 4451).

The ALJ then explained that she "accounted for [Ms. L's stiffness from prolonged sitting] by providing for a sit/stand option" in the RFC. (AR 26). But the ALJ never states any reasoning to support the determination that Ms. L would remain on task

while alternating between a sit/stand position. Moreover, the ALJ did not acknowledge that Ms. L's testimony was that she changes position not only due to stiffness, but to pain (*see* AR 56). Nor does the ALJ mention Ms. L's reports that it is difficult for her change positions—for instance, Ms. L's statements on her Function Report that she has difficulty getting into the bathtub or off the toilet. (AR 323). Without any explanation or medical opinion relied upon for this limitation, the Court cannot determine what evidence supported the "on task" determination.

The ALJ's hypotheticals to the VE also fail to provide a glimpse into the ALJ's reasoning or support for the limitation. During the hearing, the ALJ asked the VE if a hypothetical individual with the following limitations would be capable of work as a legal secretary (Ms. L's prior employment):

```
Q  Okay.  Let's issue the hypothetical questions.  Okay.  Please
assume a hypothetical individual the same age, education, and work
experience as the claimant who is capable of light work.  Stand, walk
for four hours in an eight-hour workday.  No climbing ladders, ropes,
or scaffolds.
```

No kneeling or crawling. Occasional all other posturals as defined in the SCO. Frequent handling and fingering with the bilateral upper extremities. Frequent reaching with the right upper extremity. And most avoid concentrated exposure to temp extremes, humidity, and pulmonary irritants. Would such an individual be able to perform the Claimant's past work either as actually or generally performed?

A  Yes, would be capable of the work of the legal secretary as performed and as typically performed.

Q  And if I limited that to sedentary would it be the same response?

A  Yes, the same response at sedentary.

Q  Okay. You know, Mr. Gusloff, I forgot to include when I asked about sedentary, the --

A  Mm-hmm.

Q  -- individual would need to alternate sitting and standing every 30 minutes for up to five minutes at a time while remaining on task.

A  Yeah, that type of position change would not interfere with typical sedentary work. The key is remaining on task with the alternate position.

(AR 55-57). "[W]hether a person can stay on task with an at-will sit/stand option raises a vocational question[.]" *See, e.g.*, *Pollari v. Berryhill*, No. 18-C-178, 2019 WL 293238, at *2 (E.D. Wis. Jan. 23, 2019). Thus, "as a general matter it is for the vocational expert to assess whether transitioning between sitting and standing would result in time off

task." *Green v. Saul*, No. 19-CV-528, 2020 WL 1150447, at *5 (E.D. Wis. Mar. 10, 2020). As another court in this circuit has explained, "[t]he extent to which an individual can remain on task with a sit/stand option is a vocational question that relies on the expert opinion of the VE to determine if the work processes can be accomplished efficiently enough to satisfy competitive tolerances of employers." *Shawn C. v. Kijakazi*, No. 1:21-CV-02091-TWP-MG, 2022 WL 4102852, at *5 (S.D. Ind. Sept. 8, 2022)(citing *Pollari*, 2019 WL 293238, at *2). Despite this, the ALJ stated what the perceived effect of a sit/stand option would be without allowing the VE to assess it during the hearing. *Id.* ("[R]ather than allowing the VE to testify about whether the work processes of the representative occupations could be performed with the specific sit/stand option, the ALJ asked the VE to assume that the individual would remain on task while making positional changes."). Thus, the ALJ's insertion of the on-task requirement into the question prevented the VE from testifying about the potential impact of this postural maneuver, leaving "a critical 'gap in the record.'" *Id.* (quoting *Pollari*, 2019 WL 293238, at *2).

In response, the Commissioner contends that Ms. L bears the burden of showing that she would be off task during her position switch, directing the Court to its prior decision in *Lovatto v. Saul*, No. 119CV00498TLSSLC, 2020 WL 7481688 (N.D. Ind. Oct. 30, 2020), *report and recommendation adopted,* No. 1:19-CV-498-TLS-SLC, 2020 WL 7485766 (N.D. Ind. Dec. 18, 2020). There, the claimant challenged the ALJ's decision by contending that "the ALJ erred by failing to ask the vocational expert to consider whether [the claimant] 'may' be off task while shifting positions to relieve her pain." *Id.* at *5. As the Commissioner contends, this Court found that the claimant bore the

"burden of showing she would be off task while shifting positions" and failed to do so. *Id.* But Ms. L's decision differs from the ALJ's decision in *Lovatto* in critical respects. First, the ALJ in *Lovatto* found multiple medical opinions in the record to be persuasive or generally persuasive, including a medical opinion regarding a sit/stand option. *Id.* at *3-*4. Moreover, there, the claimant testified that "she thought she could perform a job from a seated position if she were allowed to get up and 'move around' every thirty minutes to an hour." *Id.* Based on the claimant's own testimony that "she could perform work if allowed to switch position", the Court thought that the ALJ "sensibly conclude[d]" that the claimant would not be off task during a position switch. *Id.* at *5. Here, however, the Court has no testimony from Ms. L about her ability to work with a position switch. Likewise, the ALJ found no medical opinion on this issue to be persuasive, so there is no medical opinion evidence that otherwise supports this determination.

The ALJ's failure to articulate which evidence supports the on-task finding leaves the Court guessing as to the basis for this limitation, which it cannot do through its limited review. *See Moore*, 743 F.3d at 1128. The Court cannot find this error harmless, as the VE even opined that "[t]he key is remaining on task with the alternate position." (AR 57). The VE further explained that

```
      With off task, employer could generally tolerate up to
15 percent in a workday.  When a working is showing a pattern at that
level or above due to its negative impact on productivity, employers
would find it unacceptable if it was on a repeating or ongoing basis,
eventually those workers would be let go.
```

(AR 57).

Accordingly, remand is required to address this issue. *See, e.g.*, *Carper v. Comm'r of Soc. Sec.*, No. 1:25-CV-00429-ALT, 2026 WL 522668, at *4 (N.D. Ind. Feb. 24, 2026)(remanding where the claimant "correctly notes that the ALJ did not explain how the record supports his finding that [the claimant] could remain on task while changing positions"); *MICHAEL M., Plaintiff, v. KILOLO KIJAKAZI, Acting Comm'r of Soc. Sec., Defendant.*, No. 19 C 4899, 2021 WL 3550298, at *7 (N.D. Ill. Aug. 11, 2021)(stating that "the lack of explanation as to why the ALJ concluded that Plaintiff could remain on task while switching positions and needed no more than two minutes to do so is problematic"); *Tonya S. L. v. Saul*, No. 20 C 3888, 2021 WL 1209015, at *2 (N.D. Ill. Mar. 31, 2021)(finding "no logical bridge" because the ALJ failed to "cite any evidence for . . . asserting that plaintiff could remain on task while standing"); and *Mozelle v. Berryhill*, No. 2:18-CV-38, 2019 WL 1552721, at *6 (N.D. Ind. Apr. 10, 2019) (remanding where ALJ failed to explain determination that claimant could alternate between sitting and standing "without being off task").

### D.    Ms. L's Other Arguments

As stated, Ms. L raised three overarching arguments in support of remand. The Court need not discuss Ms. L's other arguments when errors have been identified in the ALJ's decision regarding the sit/stand option assessed in the RFC. On remand, the Commissioner should consider all specifications of error before rendering a decision.

**IV.     CONCLUSION**

For these reasons, the Court **REVERSES** and **REMANDS** the Commissioner's

decision for further administrative proceedings.

**SO ORDERED** this 24th day of March 2026.


s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge

16